**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Selahudin Selimovic,<br><br>Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>Defendant. | CIV 13-1248-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Selahudin Selimovic's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

## I. PROCEDURAL HISTORY

On July 18, 2008, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning January 1, 2006. (Transcript of Administrative Record ("Tr.") at 17, 288-304.) His applications were denied initially and on reconsideration. (Tr. at 144-46, 152-54.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 155.) Hearings were held on January 18, 2011 and June 30, 2011, (Tr. at 44-93, 94-143), and the ALJ issued a decision finding that Plaintiff was disabled between January 1, 2006 and January 22, 2009, but that as of January 23, 2009, Plaintiff experienced medical improvement to such a degree that he was no longer disabled (Tr. at 12-43). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making

the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Reddick, 157 F.3d at 720. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21.

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

> (3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;
>
> (4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;
>
> (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2006 – the date Plaintiff became disabled. (Tr. at 21.) At step two, he found that Plaintiff had the following severe impairments from January 1, 2006 through January 22, 2009: pain disorder of right leg, hypertension, posttraumatic stress disorder, and history of alcohol abuse. (Tr. at 21-22.) From January 1, 2006 through January 22, 2009, the ALJ found that Plaintiff's impairments met listing 1.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. Thus, the ALJ found that Plaintiff was disabled between January 1, 2006 through January 22, 2009. (Tr. at 22-24.)

Beginning January 23, 2009, however, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 24-25.) After consideration of the entire record, the ALJ found that beginning January 23, 2009, Plaintiff retained "the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) specifically as follows: the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk for four hours out of an eight-hour workday with regular breaks but not for more than one hour at a time; he can sit for six hours out of an eight-hour workday with regular breaks; he can occasionally bend, stoop, crouch, and kneel; he is restricted from crawling and balancing; he

is prohibited from climbing ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally operate foot controls with the left foot; he should avoid concentrated exposure to unprotected heights; he is limited to simple and repetitive tasks; and he can have no work involving more than occasional contact with coworkers and the public."[1] (Tr. at 25-33.) The ALJ determined that Plaintiff is unable to perform past relevant work, but found based on Plaintiff's age, education, work experience, and residual functional capacity there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. at 33-34.) Therefore, the ALJ concluded that Plaintiff's disability ended on January 23, 2009. (Tr. at 34-35.)

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by: (1) failing to properly weigh medical source opinion evidence; and (2) failing to find that there were significant numbers of jobs available for him. Plaintiff requests that the Court remand for determination of benefits.

### A. Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ erred by rejecting the opinion of his treating physician, Delwyn Worthington, M.D., without giving a "legitimate" reason. Plaintiff states that the "ALJ has erred in law by not giving controlling weight" to Dr. Worthington's opinion.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight is given to a treating physician's opinion. See id. The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. See id.; Reddick, 157 F.3d at 725. An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Reddick, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians. See Lester, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion ... ." Orn v. Astrue, 495 F.3d at 631.

Since the opinion of Dr. Worthington was contradicted by consultative and reviewing doctors' opinions, as well as, other objective medical evidence, the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Flaten

v. Secretary of Health and Human Servs., 44 F.3d 1453, 1463-64 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

In 2003, Plaintiff severely injured his foot and ankle in an auto accident. (Tr. at 436-40.) He had multiple surgeries between the accident and July 2008, when he had a mid-foot fusion. (Tr. at 479-85.)

At an October 2008 appointment with Dr. Worthington (an orthopedist), Plaintiff reported that severe pain on the plantar aspect of the right foot and most of his nerve pain were gone after his July 2008 surgery, but he still could not weight bear. (Tr. at 514-16.) Dr. Worthington noted that he suspected Plaintiff was not completely healed and recommended an ankle-foot orthotic to allow the fusion to consolidate. (Tr. at 514-16.)

In November, Plaintiff continued to complain of pain to Dr. Worthington and reported that he had not gotten the ordered orthotic. (Tr. at 531-43.) Dr. Worthington noted that if the orthotic was unsuccessful, he would consider amputation below the knee. (Tr. at 531-43.) In December 2008, Plaintiff again reported to Dr. Worthington that he had severe right foot pain, but indicated he could not really use his orthotic because of irritation. (Tr. at 600-15.)

In February 2009, Plaintiff returned to Dr. Worthington with complaints of severe pain. (Tr. at 600-15.) Dr. Worthington noted that he was somewhat hypersensitive to pain and indicated that it was out of proportion to the arthrosis that was present. (Tr. at 600-15.) He indicated that Plaintiff may have sympathetic mediated pain disorder. (Tr. at 600-15.) That same month, an electrodiagnostic study of Plaintiff's right leg and foot showed evidence of severe neuropathy of the deep peroneal nerve and acute denervation of the extensor digitorum brevis muscle. (Tr. at 600-15.) There was no evidence of radiculopathy, peripheral neuropathy, plexopathy, myopathy, or myositis. (Tr. at 600-15.)

In March 2009, Dr. Worthington described the electrodiagnostic testing as "interesting." (Tr. at 616-21.) He reported that Plaintiff was doing better with a brace but still needed a cane to walk. (Tr. at 616-19.) Dr. Worthington also wrote a letter in which he reported that Plaintiff was not pain-free and was "basically not ambulatory." (Tr. at 600-15.)

He reported that Plaintiff had significant nerve damage to his right foot and was considering amputation. (Tr. at 600-15.) Dr. Worthington concluded, "I do not think he is employable at this time." (Tr. at 600-15.)

In a February 2011 appointment with Dr. Worthington, Plaintiff requested having "everything documented" for an upcoming Social Security hearing. (Tr. at 436-40.) Dr. Worthington noted that, while they had discussed left ankle reconstruction, Plaintiff had never had that procedure. (Tr. at 436-40.) He stated that nothing had changed with respect to Plaintiff' employability, but recommended wearing a brace to improve ankle stability. (Tr. at 436-40.) In June 2011, Dr. Worthington completed a "Physical Capacities Evaluation" form. (Tr. at 908.) On that form he indicated that Plaintiff could not stand or walk, could sit for one hour per day, and had other exertional, positional, and environmental limitations. (Tr. at 908.)

Plaintiff was referred to pain management doctor Ramoun Jones, M.D., in May 2009. (Tr. at 622-37.) At his appointment, he was ambulatory without an assistive device and walked with a normal gait. (Tr. at 622-37.) Both legs were normal on inspection with normal range of motion, muscle strength and tone, and stability. (Tr. at 622-37.) Dr. Jones prescribed narcotic pain medication and gave Plaintiff information on a spinal cord stimulator. (Tr. at 622-37.) In follow-up appointments in June, July, and August, Plaintiff reported continued pain and walked with a cane. (Tr. at 656-689.)

In December 2009, Plaintiff told Dr. Jones that his pain was more frequent and the episodes lasted longer. (Tr. at 600-15.) He used a cane, and Dr. Jones adjusted his medications. (Tr. at 656-89.) Plaintiff reported to Dr. Jones in January 2010 that his pain was less frequent and episodes were shorter. (Tr. at 656-89.) Dr. Jones noted a moderate-severe limp, but also observed that Plaintiff walked without an assistive device. (Tr. at 656-89.) Plaintiff had monthly appointments with Dr. Jones for most of 2010. (Tr. at 774-808.) He was prescribed a walker in February, but only used it at a single appointment that year (in May). (Tr. at 774-808.) At his appointment in June, Plaintiff used no assistive device. (Tr. at 774-808.)

In April 2011, Dr. Jones prepared a letter in which he stated that Plaintiff was "for the most part incapacitated," including from working, driving, doing meaningful tasks, and operating heavy machinery. (Tr. at 882.) He also indicated that Plaintiff would "essentially not have function of his right lower extremity from this point forward." (Tr. at 882.) However, just the month before, Plaintiff presented to his appointment with Dr. Jones without an assistive device. (Tr. at 897.) And, at appointments in April and May, Plaintiff was able to walk with a cane. (Tr. at 887-92.)

In July 2009 state agency consultant James Hopkins, M.D., completed a Physical Residual Functional Capacity Assessment form. (Tr. at 639-46.) He determined that Plaintiff could lift and carry 10 pounds frequently and 20 pounds occasionally; stand and walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; push and pull an unlimited amount; never climb ladders, ropes, and scaffolds; and occasionally climb ramps and stairs, kneel, crouch, and crawl; and must avoid concentrated exposure to extreme cold, extreme heat, vibration, environmental irritants, and hazards. (Tr. at 639-46.)

In March 2011, Plaintiff had a consultative examination with Jeffrey Levison, M.D. (Tr. at 869-72.) Dr. Levison noted, "I do believe there could be some deception with today's exam. He is nicely bronzed. He has a wonderful tan. His hands show very thick calluses bilaterally, suggestive of very hard rigorous-type work with his hands." (Tr. at 870.) Dr. Levison observed that Plaintiff walked with a marked limp, relied heavily on his cane, and fell several times while performing a tandem gait, which he felt was "histrionic" and "for effect." (Tr. at 870.) On examination, Plaintiff had full range of motions in all joints (including his hips, knees, and ankles), full muscle strength and intact sensation in his upper and lower extremities, full grip strength, and a negative straight leg raise test. (Tr. at 870.) He noted that Plaintiff's foot injury appeared stable and not limiting and questioned the necessity of a cane. (Tr. at 870.) Dr. Levison also completed a statement regarding Plaintiff abilities, opining that he could do the following: lift and carry up to 20 pounds continually and up to 50 pounds occasionally; sit, stand, or walk for eight hours each per workday; walk

for up to one-quarter mile; reach, handle, finger, feel, push, pull, and stoop continuously; operate foot controls frequently with his right foot and continuously with his left foot; climb ramps and stairs and balance frequently; climb ladders and scaffolds, kneel, crouch, and crawl occasionally; and never work around unprotected heights or moving mechanical parts. (Tr. at 860-68.)

In addition to the evidence set forth above, the ALJ also discussed the findings of impartial medical expert and board-certified orthopedic surgeon, Arthur Lorber, M.D. Dr. Lorber testified that after January 22, 2009, Plaintiff experienced medical improvement as the result of medical treatment and right foot surgery in July 2008. Dr. Lorber stated that Plaintiff has generally recovered from his injuries, his right lower extremity pain was properly treated, and Plaintiff's pain symptoms significantly lessened after the surgical procedure. (Tr. at 96-117.)

In his evaluation of the objective medical evidence, the ALJ first addressed the opinions of Drs. Hopkins and Levison. (Tr. at 31.) The ALJ found that the opinions of these physicians are consistent in that they all assess Plaintiff as able to perform a range of work at the light or medium exertional level with some differences in the degree of specific function-by-function limitations. The ALJ determined that these opinions are reasonable and supported by the record as a whole. Specifically, the ALJ stated that "these opinions are consistent with the physical examination of the consultative examiner, which revealed the claimant had a stable right ankle and full range of motion of the right lower extremity. ... Further, these opinions are corroborated by physical examinations described above that indicate the claimant had a normal gait. Lastly, these opinions are supported by the consultative examiner's observation that the claimant engaged in rigorous work." The ALJ clarified his consideration of these opinions stating, "[n]o single assessment has been completely adopted as the residual functional capacity determined herein. I have adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." (Tr. at 31.)

Next, the ALJ addressed the opinion of medical expert, Dr. Lorber, giving "great weight" to his assessment. (Tr. at 31.) The ALJ found that Dr. Lorber's opinion regarding Plaintiff's functional limitations was highly credible because it was well-supported by the objective medical evidence. (Tr. at 31.)

The ALJ then discussed Dr. Worthington's opinion stating, "I have given little weight to [his] opinions because they are brief, conclusory, and inadequately supported by clinical findings. ... [His] opinions inadequately provided an explanation for [his] assessment or any specific functional limitations that prevented the claimant from working. Further, [his] opinions are inconsistent with the objective medical evidence as a whole ... which shows the claimant had full range of motion of the right lower extremity. ... Additionally, [his] opinions are in conflict with the physical examinations described above that indicate the claimant had a normal gait. Lastly, [his] opinions are at odds with the consultative examiner's observation that the claimant appeared to be engaged in rigorous work. ... Accordingly, I give little weight to [his] opinions because they are inconsistent with substantial evidence." (Tr. at 31-32.)

The Court finds that the ALJ properly weighed the medical source opinion evidence, and gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Worthington's opinion. The ALJ properly discredited the medical opinion due to inconsistencies with Plaintiff's treatment record and the medical evidence as a whole. The ALJ also found that his opinion was vague, conclusory, and lacked supporting clinical findings. See, e.g., Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (an ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding the incongruity between doctor's questionnaire responses and her medical records provides a specific and legitimate reason for rejecting the opinion); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes. Nowhere do his notes

indicate reasons why [the physician would limit the claimant to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that the ALJ properly rejected a physician's testimony because "it was unsupported by rationale or treatment notes, and offered no objective medical findings to support the existence of [the claimant's] alleged conditions"). Therefore, the Court finds no error.

**B. The ALJ's Finding Regarding the Significant Number of Jobs**

Plaintiff argues that the ALJ's decision should be overturned because there is not a significant number of jobs available that he could perform. Specifically, Plaintiff claims that the ALJ cannot use the job of "toy stuffer" as possible employment as that job is excluded under 20 C.F.R. Part 404, Subpart P, Appendix 2. In light of the fact that "toy stuffer" would be excluded, Plaintiff further asserts that pursuant to Lounsburry v. Barnhart, 468 F.3d 1111 (9th Cir. 2006), the single job availability of "deburrer" does not satisfy the "significant range" requirement.

In response, the Commissioner fails to respond and appears to concede Plaintiff's argument regarding the exclusion of the "toy stuffer" position pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 2. Instead, the Commissioner simply addresses the "deburrer" position contending that 13,110 positions available nationally constitutes a significant number.

The burden rests on the Commissioner at the fifth step of the analysis to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. See 20 C.F.R. § 404.1520(a)(4)(v); Lockwood v. Comm'r of Soc. Sec. Admin., 616 F.3d 1068, 1071 (9th Cir. 2010). "An individual shall be determined to be under a disability only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ... ." 42 U.S.C. § 423(d)(2)(A). "'[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id. In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical-Vocational Guidelines

promulgated by the SSA (or "grids"). See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00; Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576-577 (9th Cir. 1988).

The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00. The grids calculate whether or not the claimant is disabled based on the claimant's exertional ability, age, education, and work experience. See id. The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. See Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999). If the claimant has only exertional limitations, the claim may be resolved based only on the grids. See Lounsbury, 468 F.3d at 1115.

If the claimant has significant nonexertional limitations, the grids do not apply. See Penny, 2 F.3d at 958-59. If significant nonexertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. See Burkhart v. Bowen, 856 F.2d 1335, 1341 (9th Cir. 1988). If the claimant has both exertional and nonexertional limitations, the ALJ must consult the grids first before considering the testimony of a vocational expert at step five. See Lounsbury, 468 F.3d at 1115. If the grids direct a finding of disability, that finding must be adopted by the Commissioner. See id. at 1116.

If not, the ALJ must use the grids as a framework for consideration of how much the nonexertional limitations limit the range of work permitted by the exertional limitations. See Tackett, 180 F.3d at 1102. A nonexertional impairment, if significant, may limit the claimant's functional capacity in ways not contemplated by the Guidelines. See id. In such instances, the ALJ may not rely on the grids alone for the availability of jobs, but must obtain the testimony of a vocational expert. See id.; Thomas, 278 F.3d at 960; Moore v. Apfel, 216 F.3d 864, 869-71 (9th Cir. 2000).

The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and

reflecting all the claimant's limitations. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F .3d 685, 690 (9th Cir. 2009); Thomas, 278 F.3d at 956; Desrosiers, 846 F.2d at 578 (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record.").

As indicated previously, the ALJ found that Plaintiff is unable to perform past relevant work. He also found that since January 23, 2009, Plaintiff is an individual closely approaching advanced age. Plaintiff was 53-years-old at the time of the June 30, 2011 hearing and, presumably, 53-years-old on the date of the ALJ's September 22, 2011 decision.[2] The ALJ stated that "[b]eginning January 23, 2009, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2)." The ALJ further determined that "if the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.14." However, the ALJ found that Plaintiff's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations. Thus, in order to determine the extent of erosion of the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity.

The vocational expert testified that given all of these factors, Plaintiff would be able to perform the requirements of (1) "toy stuffer" – a sedentary, unskilled occupation

---

[2] Age must factor into the ALJ's disability determination. See 20 C.F.R. § 404.1563(a). In assessing a case, the relevant age is plaintiff's age on the date of the final ALJ decision. See Lockwood, 616 F.3d at 1070-71. The grids factor in age by putting a person into one of "three age categories: younger person (under age 50), person closely approaching advanced age (age 50-54), and person of advanced age (age 55 or older)." Id. at 1071 (citing 20 C.F.R. § 404.1563(c)-(e)).

consisting of 3,960 positions in the regional economy and 338,920 positions in the national economy, and (2) "deburrer" – a light, unskilled occupation consisting of 113 positions in the regional economy and 13,110 positions in the national economy.

As to Plaintiff's argument regarding the "deburrer" position, the Court first notes that, even assuming the job of "toy stuffer" is excluded, Lounsburry does not apply. In Lounsburry, the claimant was of advanced age (62), retained transferrable skills from her previous employment, and was capable of light work. See id.; 20 C.F.R. Pt. 404, Subpt. P, App. 2. The ALJ found the claimant to be capable of one occupation and concluded that she was not disabled. See Lounsburry, 468 F.3d at 1113.

On appeal, the Ninth Circuit held that the ALJ erred by not applying Rule 202.00(c). See id. at 1116; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Rule 202.00(c) provides that "for individuals of advanced age who can no longer perform vocationally relevant past work and who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled." Lounsburry, 468 F.3d at 1116; see 20 C.F.R. Pt. 404, Subpt. P, App. 2. The Court held that one job does not satisfy the statute's "significant range" requirement, and the claimant was, in fact, disabled. See Lounsburry, 468 F.3d at 1116.

Plaintiff argues that the "significant range" requirement applies to his case. However, he ignores the plain language of the rule. Rule 202.00(c) speaks only to individuals of advanced age, who retain transferable skills, and are capable of light work. See 20 C.F.R. Pt. 404, Subpt. P, App. 2. The rule does not apply where, as here, Plaintiff is a younger person, with no finding as to transferable skills, and is capable of light work. The facts and holding of Tommasetti v. Astrue, 533 F.3d 1035 (9th Cir. 2008) are instructive on this point.

In Tommasetti, the claimant was of advanced age, retained transferrable skills, and was capable of sedentary work. See id. at 1043. The ALJ found him not disabled based on his ability to perform one job. See id. On appeal, the claimant argued that the "significant range" requirement applied to his case. See id. The Ninth Circuit disagreed and "rejected

the claimant's attempt to graft rules applicable to the light exertion grid onto the sedentary exertion grid." Id. at 1044. Here too, the Court rejects Plaintiff's attempt to apply rules for individuals of advanced age with transferable skills to younger individuals with no finding as to transferable skills.

Although Lounsburry does not apply to the instant case, the Court finds that the ALJ failed to identify a significant number of "light work" jobs available in the national economy that can be performed by Plaintiff. While one job within a relevant category can be sufficient, as long as the one occupation still has a significant number of positions that exist in the national economy, see Udell v. Colvin, 2013 WL 4046465, at *7 (S.D. Cal. Aug. 8, 2013); see, e.g., Tommasetti, 533 F.3d at 1044, the Ninth Circuit has "never set out a bright-line rule for what constitutes a 'significant number' of jobs," but instead finds a "comparison to other cases instructive." Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012).

In Beltran, the court determined that 135 regional jobs and 1,680 national jobs were not a significant number of jobs. See id. at 389-90. In making that determination, the Ninth Circuit considered cases that addressed what constitutes a significant number of jobs. See id. at 389 (citing Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266 jobs regional jobs significant); Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1987) (amended) (3,750 to 4,250 regional jobs significant); Thomas, 278 F.3d at 960 (1,300 jobs in the Oregon region and 622,000 in the national economy significant); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (30,000 regional jobs significant); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (2,300 regional jobs and 64,000 nationwide jobs significant)).

Additionally, Ninth Circuit cases have found 64,000 jobs nationwide to be significant, Moncada, 60 F.3d at 524, as well as larger numbers. See Thomas, 278 F.3d at 960 (622,000 jobs in the national economy significant); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (7,700 regional and 125,000 national jobs significant). Further, district courts considering the Ninth Circuit findings have determined that smaller numbers of jobs are not significant. See Coletta v. Massanari, 163 F.Supp.2d 1101, 1106 (N.D. Cal. 2001) (363 jobs in the state

economy and 4,752 positions in the national economy not significant); Valencia v. Astrue, No. C 11-06223 LB, 2013 WL 1209353, at *18 (N.D. Cal. Mar. 25, 2013) (114 regional jobs and 14,082 national jobs not significant).

Here, the 113 positions in the regional economy is substantially less than the number of regional jobs set forth in the cases that the Ninth Circuit has found to be significant (ranging, as noted above, from 1,266 to 30,000 regional jobs). Further, the 13,110 positions in the national economy is closer to the number of jobs found to be not significant (14,082 national jobs identified in Valencia, 2013 WL 1209353, at *18) than significant (64,000 national jobs identified by the Ninth Circuit in Moncada, 60 F.3d at 524). Accordingly, the Court finds that the number of jobs available for the "deburrer" position is not significant.

The Court notes that the ALJ undoubtedly based his decision regarding significant numbers, in part, by considering the number of jobs for both the "deburrer" position and the "toy stuffer" position. As stated above, however, Plaintiff argues, and the Commissioner appears to concede, that the ALJ cannot use the job of "toy stuffer" as possible employment for Plaintiff as that job is excluded under 20 C.F.R. Part 404, Subpart P, Appendix 2.

In this case, the ALJ concluded that Plaintiff has the residual functional capacity to perform light work, but stated that Plaintiff's ability to perform all or substantially all of the requirements of light work has been impeded by additional limitations. As such, the level dictated by the ALJ's residual functional capacity assessment presumably falls somewhere between light and sedentary. If a plaintiff's exertional level falls between two rules which direct opposite conclusions under the grids, i.e., "not disabled" at the higher exertional level and "disabled" at the lower exertional level, the ALJ "is required to call a vocational expert and hear testimony as to whether the claimant can perform enough light jobs in the national economy to warrant a finding of 'not disabled.'" Desrosiers, 846 F.2d at 579-80.

If a claimant is closely approaching advanced age, has no transferable skills,[3] and is limited to sedentary work, the ALJ must find that claimant disabled based on the sedentary grid. However, if a claimant with the same characteristics is able to perform light work, the Medical-Vocational Guidelines direct a conclusion of not disabled. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.14 (directing a finding of "not disabled" for claimant who is closely approaching advanced age, who has no transferable skills, and who is functionally capable of performing light work); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g) (directing a finding of "disabled" for claimant who is closely approaching advanced age, who has no transferable skills, and who is functionally limited to sedentary work).

In Distasio v. Shalala, 47 F.3d 348 (9th Cir. 1995), "[t]he ALJ found that [the plaintiff] was capable of light work, but with limitations." Id. at 349. "The vocational expert testified that [the plaintiff] could only perform what she believed were sedentary jobs [and] [t]he [ALJ] accepted the testimony of the vocational expert without qualification." Id. Because "[t]he [ALJ] failed to account for the discrepancy between a finding that [the plaintiff] could perform light work and was therefore not disabled, [and] the [vocational expert's] testimony establishing that, at best, [the plaintiff] could perform jobs that fell within the sedentary category," the Ninth Circuit reversed and remanded for an award of benefits. Id. at 350. The case at issue resembles Distasio.

In particular, the ALJ here also found Plaintiff capable of light work with limitations, and accepted the vocational expert's testimony regarding the availability of the sedentary "toy stuffer" position and the light "deburrer" position without qualification. However, the Court has found that the ALJ failed to identify a significant number of "light work" jobs available in the national economy that can be performed by Plaintiff.

Thus, in order to find that Plaintiff is not disabled at the fifth step of the sequential evaluation process, the ALJ had to provide evidence that light jobs exist in significant

---

[3] The ALJ did not reach "transferability of job skills," as he concluded it was "not material." If necessary on remand, the ALJ should address whether plaintiff has transferable skills.

numbers in the national economy that he can perform, given the residual functional capacity assessment made by the ALJ. See 20 C.F.R. § 404.1560(c)(2). The Court cannot confidently conclude that the ALJ's step five determination is supported by substantial evidence, and this issue could have a decisive effect on Plaintiff's disability determination. If Plaintiff is found capable only of sedentary work, the grids may mandate a finding of "disabled." See 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(g)

"R]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find claimant disabled if all the evidence were properly evaluated." Hill v. Astrue, 698 F.3d 1153, 1162 (9th Cir. 2012) (citing Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009)). "[T]he proper course, except in rare circumstances, is remand to the agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam). The Ninth Circuit has held that when "additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v.. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (remanding "to the Secretary for proper consideration of step three equivalence"). In this case, remand is appropriate for renewed consideration at Step Five as to whether there are a significant number of jobs in the national economy that can be performed by Plaintiff.

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

\\\

## V. CONCLUSION

For the reasons discussed in this Order, the Commissioner's decision is reversed and this matter is remanded for further administrative proceedings.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision is **REVERSED** and this matter is **REMANDED** for further proceedings as set forth in this Order. The Clerk of the Court is **DIRECTED** to enter judgment accordingly.

DATED this 17th day of September, 2014.

Michelle H. Burns
United States Magistrate Judge